IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT L. CALDWELL,

       Petitioner,

      v.                         No. 12-3150-SAC

STATE OF KANSAS and
ATTORNEY GENERAL OF KANSAS,

       Respondents.

MEMORANDUM AND ORDER

This case comes before the Court on a petition for habeas corpus filed pursuant to 28 USC § 2254. Petitioner was convicted in state court of obstruction of legal process and was sentenced to a term of 16 months' imprisonment. He raises multiple claims in support of this habeas petition.

## I. Procedural History

The procedural history of this case has been established by the Kansas Court of Appeals (KCOA) in Petitioner's direct appeal, *State v. Caldwell*, 260 P.3d 1249 (Table), 2011 WL 4716755 (Case No. 104,699) (Kan. Ct. App. Oct. 7, 2011) (Unpublished Opinion). Petitioner filed a pro se motion for new trial, was granted an evidentiary hearing, and testified to his grievances of ineffective assistance of counsel. The Kansas Supreme Court denied review.

This Court adopts the facts stated by the KCOA in its decision and shall not repeat them except as necessary to the analysis of this petition. *See* 28

U.S.C. § 2254(e)(1) (a court presumes that the factual findings of the state court are correct unless the petitioner rebuts that presumption by "clear and convincing evidence."); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004). In short, Petitioner, while on felony probation supervision, went to meet with his Intensive Supervision Officer but left that location after having been told he was not free to leave. A police officer went to look for him, saw him, and yelled for him to stop, but Petitioner ran away. The officer eventually caught up to him and tased him twice. The officer's report indicated that soon after the Petitioner was taken into custody the officer asked him why he had run from him, and the Petitioner responded that he ran because he thought his parole was going to be revoked.

## II.  AEDPA Standard

The habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA "erects a formidable barrier to federal habeas relief," *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013), and "requires federal courts to give significant deference to state court decisions" on the merits. *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013); *see also Hooks v. Workman*, 689 F.3d 1148, 1162-63 (10th Cir. 2012) ("This highly deferential standard for evaluating state-court rulings demands state-court decisions be given the benefit of the doubt." (quotations omitted)).

Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court

may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 783-84, 178 L.Ed.2d 624 (2011).

"Clearly established law is determined by the United States Supreme Court, and refers to the Court's holdings, as opposed to the dicta." *Lockett*, 711 F.3d at 1231 (quotations omitted). A state court decision is "contrary to" the Supreme Court's clearly established precedent "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (quotations omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Williams v. Taylor*, 529 U.S. 362, 407-08, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Likewise, a state court unreasonably applies federal law when it either unreasonably extends, or refuses to extend, a legal principle from Supreme

Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). In making this assessment, the Court reviews the factual findings of the state court for clear error, reviewing only the record that was before the appellate court. *Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).

A writ of habeas corpus may issue only when the petitioner shows "there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Richter,* 131 S.Ct. at 786 (emphasis added). "Thus, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Id.* "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Titlow*, 134 S. Ct. at 16 (quoting *Richter*, 131 S. Ct. at 786). See *Frost v. Pryor*, __ F.3d __, 2014 WL 1647013 (10th Cir. April 25, 2014).

## III. Issues

Petitioner raises several issues. Some were presented to the state court, but others were not.

### A. Self-Incrimination

Petitioner alleges that the district court did not properly inform him of his Fifth Amendment right against self-incrimination. Specifically, he contends the court failed to tell him that if he testified, he could be impeached by his prior inconsistent statement to his arresting police officer, Deputy Dodge. The KCOA found that this issue had not been presented to the trial court, so was not properly before it. Nonetheless, it held that even if it considered the merits, the argument failed. Because the KCOA analyzed the merits of this argument, this Court shall do the same.

### Facts

After the State rested its case-in-chief, the following dialogue occurred:

> "MR. NEWTON [DEFENSE COUNSEL]: I have two things. First of all, I would like to make my motion for judgment of acquittal at [the] end of the State's case.
> "Second, it is anticipated that Mr. Caldwell will take the stand and testify in his own defense. I would like the Court to make him aware of his rights and so we have a record for appellate purposes.
> "THE COURT: Insofar as your motion for judgment of acquittal, I will overrule that.
> "Mr. Caldwell, Mr. Newton has indicated to me it is your desire to testify in this case. Is that correct?
> "THE DEFENDANT: Yes, sir.
> "THE COURT: Do you understand that you have a constitutional right not to testify?
> "THE DEFENDANT: Yes, sir.

"THE COURT: You understand that no one could make you testify in this case because you are protected with what we call the right against self-incrimination.

"THE DEFENDANT: Yes.

"THE COURT: That right says no one can put you in a position where you could be a witness against yourself. So the only way you would testify in this case would be if you want to. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: If you give up your Constitutional right against self-incrimination, you will be subjected to cross-examination by the State's attorney after you finish your direct examination. Do you understand?

"THE DEFENDANT: Yes.

"THE COURT: Having all that in mind, is it your desire to give up that right against self-incrimination and testify?

"THE DEFENDANT: Yes.

…

"MR. EDWARDS [PROSECUTOR]: Because the defendant would likely testify now, Deputy Dodge in his report indicates that not long after the defendant was taken into custody he asked him why he had run from him and the defendant advised him he felt he was going to be revoked; that his parole was going to be revoked.

"I didn't seek to admit that because no Miranda had been given. I do believe it was a voluntarily-made statement. If we need to have [a] *Jackson v. Denno* hearing, I would like to do that at some point.

"I'll defer to [opposing] Counsel, if they think there is question about voluntariness. I do intend to recall Deputy Dodge after the defendant's testimony. I wanted to let the Court know that."

R. Vol. IV, 89-90.

The trial court immediately held a hearing on the voluntariness of Caldwell's statement to Deputy Dodge immediately after the deputy took him into custody that he had run away because he thought his parole would be revoked. R. Vol. IV, 92-96. The judge found the statement inadmissible in the State's case-in-chief because there had been no *Miranda* warning, but admissible on cross-examination for the purpose of attacking Petitioner's credibility. R. Vol. IV, 96-97.

## KCOA Holding

The KCOA recited the facts noted above, then found that Petitioner fully understood the consequences of taking the stand to testify on his own behalf. Its analysis follows.

A criminal defendant has a constitutional right to testify in his or her own behalf. *Rock v. Arkansas,* 483 U.S. 44, 51–52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The decision whether a defendant will testify is to be made by the defendant after full consultation with counsel. See *Flynn v. State,* 281 Kan. 1154, 1163, 136 P.3d 909 (2006). Thus, when a criminal defendant asserts a challenge regarding his or her constitutional right to testify, we review the matter de novo. See *State v. Carter,* 284 Kan. 312, 318–19, 160 P.3d 457 (2007).

In *Taylor v. State,* 252 Kan. 98, 105–06, 843 P.2d 682 (1992), our Supreme Court held that a trial court is not required to advise a defendant of his or her right to testify or obtain an on-the-record waiver of that right when a defendant is represented by counsel.

> "A trial court has no duty *sua sponte* to address a silent defendant and inquire whether he or she knowingly and intelligently waives the right to testify. An express waiver, on the record, is not necessary because a defendant's conduct provides a sufficient basis from which to infer that the right to testify is waived. There is a danger that by asking a defendant if he or she is aware of his [or her] right to testify, a trial court may inadvertently influence a defendant to waive the equally fundamental right against self-incrimination." 252 Kan. 98, Syl. ¶ 5.

As indicated above, most of the case law in this area concerns a defendant's waiver of his or her constitutional right to testify. Here, we are not dealing with a waiver of that right. Rather, we are dealing with the exercise of a constitutional right. The record indicates that Caldwell fully understood his right to testify. In an abundance of caution, defense counsel asked the trial court to make sure that Caldwell understood the consequences of taking the stand in his own defense and to provide a record of his understanding. The trial court did just that. Now, Caldwell argues that he was not fully aware of the consequences because the trial court should have reassessed Caldwell's understanding after the trial court ruled Caldwell's

statement to Officer Dodge of running away because he violated his parole would be admissible to challenge Caldwell's contrary testimony.

The record is not silent regarding Caldwell's privilege to testify. Here, the record indicates a deliberate choice by Caldwell to testify in his own behalf. Caldwell knew he had a constitutional right to testify, that he had a right against self-incrimination, and that he would be subject to cross-examination on the stand by the prosecutor. The State's actions of having the *Jackson v. Denno* hearing prior to Caldwell's testimony is an act in further support of a finding that Caldwell fully understood the probable consequences of testifying on his own behalf. See *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Caldwell knew that Officer Dodge would testify if necessary that Caldwell said that he "knew he had a dirty [urinalysis test] and his parole was going to be revoked" in an attempt to impeach any contrary testimony submitted by Caldwell. Had the State waited until after Caldwell's testimony to request the *Jackson v. Denno* hearing, Caldwell's argument might gain a bit of weight, but not much. The Model Rules of Professional Conduct explain the scope of an attorney's representation of his or her client in a criminal case. Rule 1.2(a) (2010 Kan. Ct. R. Annot. 418) states: "In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and *whether the client will testify.*" (Emphasis added.)

We conclude Caldwell fully understood the consequences of taking the stand to testify on his own behalf and that prior to his testimony, he was aware of the credibility evidence that could, and probably would, be presented by the State against him. Therefore, we hold the trial court did not err in its ruling.

*Caldwell*, at 3-5.

## Habeas Review

"[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The decision to testify or not belongs to the defendant, though counsel should advise him of the implications of this choice. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Cannon v. Mullin*, 383 F.3d 1152, 1171

(10th Cir. 2004). Counsel, however, "lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy." *Cannon*, 383 F.3d at 1171. The Supreme Court has never held that the trial court has any duty to advise a defendant of each consequence that may flow from exercising his right to testify. And the Tenth Circuit has held that a trial court has no duty to explain to the defendant that he has a right to testify. *United States v. Williams*, 139 Fed. Appx. 974, 976 (10th Cir. 2005).

The Fifth Amendment protects against compelled self-incrimination. *See Baxter v. Palmigiano,* 425 U.S. 308, 316–318, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976). A defendant who takes the stand in his own defense cannot claim the privilege against self-incrimination when the prosecution seeks to cross-examine him. *Brown v. Walker,* 161 U.S. 591, 597–98, 16 S.Ct. 644, 647, 40 L.Ed. 819 (1896). Once a defendant decides to testify, "[t]he interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination." *Brown v. United States,* 356 U.S. 148, 156, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958). Thus a defendant who testifies is " 'subject to cross-examination impeaching his credibility just like any other witness.' " *Jenkins v. Anderson*, 447 U.S. 231, at 235-236, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (quoting *Grunewald v. United States,* 353 U.S. 391, 420, 77 S.Ct.

963, 1 L.Ed.2d 931 (1957)). Even a statement taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), may properly be used to impeach a defendant's credibility. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). And pressure generated by the strength of the government's case against a defendant does not constitute "compulsion" for Fifth Amendment purposes. *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 287, 118 S.Ct. 1244, 1253,140 L.Ed.2d 387 (1998).

The KCOA relied on law consistent with that established by the United States Supreme Court, noted above. Further, the KCOA's factual findings were objectively reasonable. Nothing in the record indicates that Petitioner may have been coerced to testify or even unfairly surprised at the fact or content of his impeachment. The district court specifically informed Petitioner that if he decided to testify he would be subject to cross-examination by the State's attorney. The district court thereafter held a *Jackson v. Denno* hearing, *see* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), putting Petitioner on notice of the very evidence that would be used to impeach him should he choose to testify. And that evidence consisted of Petitioner's own prior statement, of which he was already aware. Thereafter, Petitioner made his choice to testify. No basis for habeas relief has thus been shown.

## B. Improper Jury Instruction

Petitioner also claims that he was denied a fair trial by an improper jury instruction. But Petitioner never presented this ground for relief to the KCOA, so it is unexhausted, as Petitioner admits in his petition.

Federal habeas review is available only where the petitioner has given the state courts "one full opportunity to resolve any constitutional issues." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Petitioner has not done so here.

Even though "[a] habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion [since] there are no state remedies any longer 'available to him," *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), "there is a procedural default for purposes of federal habeas." *Id.* at 735 n. 1. Accordingly, this claim is procedurally barred from federal habeas review because it was not fairly presented to the Kansas Supreme Court and would now be untimely under Kansas's procedural rules. *See O'Sullivan*, 526 U.S. at 848.

For the Court to reach the merits of this claim, Petitioner must show cause for his default and prejudice as a result of the alleged violation of federal law, or demonstrate that this Court's failure to consider the claim will result in a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 488-89, 496, 106 S.Ct. 2639, 2645-46, 2649, 91 L.Ed.2d 397 (1986).

To show cause, petitioner must demonstrate that "some objective factor external to the defense impeded [his] efforts to comply" with the state law. *Murray,* 477 U.S. at 488. "Such an external factor might, for example, be proven by a 'showing that the factual or legal basis for a claim was not reasonably available to counsel, ... or that some interference by officials made compliance impracticable." *Scott v. Mullin*, 303 F.3d 1222, 1228 (10th Cir. 2002) (quoting *Murray,* 477 U.S. at 488).

To show prejudice, petitioner must show that he suffered "actual prejudice as a result of the alleged violation of federal law." *Coleman,* 501 U.S. at 750. Thus the petitioner must demonstrate "a reasonable probability that, but for [the alleged] erro[r], the result of the proceeding would have been different." *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) quoting *Strickland,* 466 U.S., at 694, 104 S.Ct., at 2068.

"The "miscarriage of justice" exception to this general rule requires a more substantial showing: The defendant must not simply demonstrate a *reasonable probability* of a different result, he must show that the alleged error *more likely than not* created a manifest miscarriage of justice." *Sawyer*, 505 U.S. at 364 (emphasis in original). This is "a narrow exception to the cause requirement where a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." *Dretke v. Haley,* 541 U.S. 386, 393, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (internal quotation marks omitted).

> "[T]he fundamental miscarriage of justice exception seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To make a credible showing of actual innocence, a "petitioner must 'support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Cummings*, 506 F.3d at 1223 (quoting *Schlup*, 513 U.S. at 324). This new evidence "must be sufficient to 'show that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence.'" Id. (quoting *Schlup*, 513 U.S. at 327); accord House, 547 U.S. at 539-40 (reaffirming the *Schlup* test after AEDPA). This standard is "demanding and permits review only in the extraordinary case." *House*, 547 U.S. at 538 (quotations omitted).

*Frost,* at 17.

Petitioner has failed to assert and to show either cause and prejudice, or actual innocence, as is necessary to overcome this procedural default.

### C. Excessive Use of Force in Arrest

Petitioner contends that his Eighth Amendment right against cruel and unusual punishment was violated by the police officer's excessive use of force during his arrest. But Petitioner cannot raise this claim in a habeas proceeding.

The Eighth Amendment protects *convicted prisoners* from cruel and unusual punishment. See *Ingraham v. Wright,* 430 U.S. 651, 671, n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). Petitioner's claim of excessive force is based upon the Fourth Amendment and arises

under 42 U.S.C. § 1983. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that all claims that law enforcement officers have used excessive force in the course of an arrest of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.'). Although Petitioner was on supervised probation at the time of the challenged arrest, he had not yet been convicted of or sentenced for the offense for which he was arrested, allegedly by use of excessive force, so should not be treated as a convicted prisoner for purposes of analyzing this issue. *Cf, Freeland v. Sacramento City Police Dept.*, 2010 WL 408908 (E.D.Cal. 2010), and cases cited therein at p. 12 (finding that parolees are not treated as convicted prisoners for purposes of excessive use of force claims). Fourth Amendment claims are barred from review on federal habeas pursuant to the doctrine articulated by the Supreme Court in *Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie).

Moreover, excessive force claims of this type do not implicate the validity of a defendant's state court conviction. *See Jackson v. Suffolk County Homicide Bureau,* 135 F.3d 254, 257 (2d Cir.1998) (noting that "a claim for use of excessive force lacks the requisite relationship to the conviction") (citing *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364,

129 L.Ed.2d 383 (1994)); 28 U.S.C. § 2254(a). See *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (an "illegal arrest does not void a subsequent conviction); *United States v. Crews,* 445 U.S. 463, 474, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980) ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction.") (citations omitted). Accordingly, Petitioner's excessive force claim is not cognizable on federal habeas review.

### D. *Apprendi* Error

Petitioner contends that his sentence violates the holding of *Apprendi v. New Jersey*, and his Sixth and Fourteenth Amendment rights under the United States Constitution, because his criminal history was not proved beyond a reasonable doubt to the jury in this underlying case.

### State Court Holding

On appeal to the KCOA, Petitioner conceded this issue is controlled by *State v. Ivory,* 273 Kan. 44, 46–48, 41 P.3d 781 (2002), but raised the issue to preserve it for federal review. The KCOA held:

> In *Ivory,* our Supreme Court held that the use of criminal history scores is not unconstitutional under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We are duty bound to follow Kansas Supreme Court precedent absent some indication the court is departing from its previous position. *State v. Merrills,* 37 Kan.App.2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). Our Supreme Court recently reaffirmed its holding from *Ivory* in *State v. Ventris,* 289 Kan. 314, 318, 212 P.3d 162 (2009). Because our Supreme Court is not departing from its precedent, we hold the trial court did not err in its determination of Caldwell's criminal history score.

*State v. Caldwell*, 2011 WL 4716755 at 7.

### Habeas Review

Clearly established federal law holds: " *Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (italics added). *See Blakely v. Washington,* 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). This "prior conviction" exception originated in the earlier case of *Almendarez–Torres v. United States,* 523 U.S. 224, 226–27, 118 S.Ct. 1219, 140 L.Ed.2d 350  (1998), where the Court found that a prior conviction is a sentencing factor and is not an element of a crime, and thus need not be proven beyond a reasonable doubt. The Supreme Court's rationale is that prior convictions "entered pursuant to proceedings with substantial procedural safeguards of their own" are not "contested issues of fact," and that recidivism has traditionally been the basis for a sentencing court to increase an offender's sentence. *Apprendi,* 530 U.S. at 488–89.

Accordingly, the sentencing court properly relied on Petitioner's criminal history although it was not proven to a jury in his case underlying this petition. Thus the KCOA's adjudication of petitioner's claim did not result in a "decision that was contrary to … clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Nor did the

state court engage in an objectively unreasonable application of the principles in *Apprendi* or its progeny. *See Anderson v. Mullin,* 327 F.3d 1148, 1158 (10th Cir.), *cert. denied,* 540 U.S. 916 (2003).

### E. Ineffective Assistance of Trial Counsel

Petitioner alleges that he was denied his Sixth Amendment right to effective assistance of counsel in multiple ways. But the only such claim that was properly presented to and resolved by the state courts is that his counsel's statements to the jury contradicted Petitioner's own testimony.

In his pro se motion for new trial, Petitioner alleged ineffective assistance of counsel based on discrepancies between his testimony and defense counsel's opening statement which made it appear Petitioner he gave false testimony to the jury. At the hearing on the motion, Petitioner gave these specific examples of the contradicting testimony: (1) counsel stated in opening argument that Petitioner left the residential center to go home, but Petitioner testified that he left to catch the bus to go back to work; (2) counsel stated in opening argument that Petitioner ran toward the QuikTrip for help, but Petitioner testified he was not running to the QuikTrip; and (3) counsel stated in closing that Petitioner was first tasered in the back, but Petitioner had testified that he was first tasered in the leg.

### KCOA Holding

The KCOA addressed this issue in determining whether the trial court

made sufficient findings of fact and law on the issue of ineffective assistance

of counsel.

> ... First, as to Caldwell's first two claims of contradictory testimony, it was not defense counsel that gave contradictory testimony, but it was Caldwell himself who took the stand and provided the contradictory testimony. This appears to be invited error. A defendant may not invite error and then complain of the error on appeal. *See State v. Divine*, 291 Kan. 738, 742, 246 P.3d 692 (2011). Caldwell knew the evidence presented to the jury before he took the stand. He made the conscious choice to testify contrary to all the testimony presented up to that point. This was the essence of the trial court's denial of Caldwell's motion and we affirm this rationale.

> Further, in our review of the record, during closing argument, defense counsel paralleled Caldwell's testimony by stating that Caldwell was thinking, "I'm not going to make that last bus. If I don't get—I have to get back to work tonight." Additionally, the location of where Caldwell was tasered first in the back or the leg was never discussed by the prosecutor during closing argument, and we find it had no effect on Caldwell's credibility. We are not convinced, nor does it appear to even be the case, that defense counsel "completely undermined the defendant's credibility by contradicting the defendant's testimony and that of all his witnesses" as was the situation in *Com. v. Sarvela*, 16 Mass.App. 934, 935, 459 N.E.2d 114 (1983) ("By shifting gears in this manner, defense counsel impermissibly ignored the defendant's principal defense and indirectly conceded the guilt of his client.").

*State v. Caldwell*, 2011 WL 4716755, 6 -7. Although the KCOA found the

district court's findings were not as specific as the rule required, the KCOA

was nonetheless able to conduct a meaningful appellate review and

concluded  the issue of ineffective assistance of counsel lacked merit. *Id*, at

7.

**Habeas Review**

The Court reviews petitioner's claim of ineffective assistance of counsel under the familiar framework laid out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that standard, to prevail on a claim of ineffective assistance of counsel, petitioner must show both that his counsel's performance "fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687–88; accord *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010).

This court's review of counsel's performance is "highly deferential." *Hooks*, 606 F.3d at 723. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (quotation omitted). "To be deficient, the performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong." *Hooks*, 606 F.3d at 723 (citations omitted) (internal quotation marks omitted); accord *Gardner v. Galetka*, 568 F.3d 862, 874 (10th Cir. 2009), *cert. denied*, 559 U.S. 993, 130 S.Ct. 1737, 176 L.Ed.2d 215 (2010). "The Supreme Court requires [the court] to make 'every effort … to eliminate the distorting effects of hindsight' by indulging in a strong presumption counsel acted reasonably." *Strickland*, 466 U.S. at 689. Petitioner bears a heavy

burden of overcoming the presumption that counsel's actions were sound trial strategy. *Byrd*, 645 F.3d at 1168.

Furthermore, because this is a § 2254 proceeding, the Petitioner faces an even greater challenge, as this court defers not only to the attorney's decision in how to best represent a client, but also to the state court's determination that counsel's performance was not deficient. *Byrd*, 654 F.3d at 1168. For that reason, this court's review of a defendant's habeas claim of ineffective assistance of counsel is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009).

In denying Petitioner's claims of ineffective assistance of trial counsel, the KCOA evaluated the evidence of record to determine whether counsel's performance was deficient. It thus applied law consistent with the United States Supreme Court's *Strickland* standard for ineffective counsel. *See State v. Caldwell*, 2011 WL 4716755, 6 -7. The KCOA's failure to mention *Strickland* is immaterial because complying with AEDPA does not require citation of Supreme Court cases, or even awareness of them, as long as neither the reasoning nor the result of the state-court decision contradicts them. *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

Further, the KCOA's factual findings were objectively reasonable. Petitioner heard the opening statements and testimony before choosing to

testify contrary to it; during closing argument defense counsel affirmed Petitioner's testimony that he was trying to catch the last bus; and whether Petitioner was tasered on the leg or back first was immaterial and did not affect Petitioner's credibility. In short, the KCOA found that that trial counsel had not seriously undermined the Petitioner's credibility, that Petitioner was not prejudiced by any contradiction, and that Petitioner had created some of the contradictions himself. Thus no basis for habeas relief has been shown.

## IV. Evidentiary Hearing

The court finds no need for an evidentiary hearing. ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.)" *Anderson v. Attorney Gen. of Kansas,* 425 F.3d 853, 859 (10th Cir.2005) *Schriro,* 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## V. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). *See United States v. Bedford,* 628 F.3d 1232 (10th Cir. 2010). The Court finds that Petitioner has not met this standard as to any issue squarely presented in this case, so denies a certificate of appealability.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

Dated this 14th day of May, 2014, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge